FIFTH DIVISION

                                                December 29, 2000

No. 1-99-3093

THERESA MARTIN,

Plaintiff-Appellant,

v.

ILLINOIS FARMERS INSURANCE, incorrectly sued herein as FARMERS INSURANCE GROUP OF COMPANIES, and COUNTRY MUTUAL INSURANCE COMPANY,

Defendants-Appellees. 

))))))

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Aaron J. Jaffe,

Judge Presiding.

JUSTICE QUINN delivered the opinion of the court: 

Plaintiff, Theresa Martin, brought a declaratory judgment action seeking to construe the limits of underinsured motorist coverage contained in insurance policies issued by defendants Illinois Farmers Insurance Company and Country Mutual Insurance Company.  The trial court granted defendants' motions to dismiss plaintiff's action for declaratory relief pursuant to sections 2-615 and 2-619 of the Code of Civil Procedure.  735 ILCS 5/2-615 (West 1998); 735 ILCS 5/2-619 (West 1998).  On appeal, plaintiff contends that the trial court erred in finding that: 1) the antistacking provisions contained in defendants' respective insurance policies were unambiguous;  2) her loss of society claim is subject to the per person limit of the Illinois Farmers Insurance policy; and 3) she is not entitled to recover damages for defendants' alleged "vexatious and unreasonable" delay in settling her claim pursuant to section 155 of the Illinois Insurance Code (210 ILCS 5/155 (West 1998)).  
For the reasons which follow, we affirm.

On March 7, 1997, plaintiff's husband, Richard Martin III was killed while riding as a passenger in a vehicle driven by his father, Richard Martin Jr.  Richard Martin Jr. had liability insurance with Illinois Farmers Insurance Company (Farmers) that was in full force and effect at the time of the accident with underinsured motorist coverage limits of $100,000 per person/$300,000 per occurrence.  

The Farmers policy contains two clauses that are particularly significant to this appeal.  Farmer's policy first defines "underinsured motor vehicle" as follows:

"[A] motor vehicle for which the owner or

operator is insured or bonded for bodily injury liability at the time of the accident in an amount equal to or greater than the amount specified by the financial responsibility laws of Illinois, but less than the limits of liability shown on the declaration page of this policy for uninsured motorist coverage."  

The next clause of importance in the Farmers policy is the "limits of liability" clause for uninsured and underinsured motorist coverage that provides in pertinent part:

"The limits of liability for underinsured

motorist coverage are the same limits shown on the declaration page of this policy for uninsured motorist coverage.  The amount of underinsured motorist coverage we will pay shall be the lesser of:

(1) The limits of liability reduced

by all amounts paid in damages to the insured person by or for any person or organization who may be legally liable for the bodily injury;

(2) The unrecovered amount of

damages established by an agreement, settlement, or judgment with or for the persons or organizations legally liable for the bodily injury."

We note that the section quoted above is cited by both Farmers and plaintiff as being a part of the insurance policy.  However, a thorough review of the record indicates that this section of the insurance policy was not included in the record.  Farmers' motion to dismiss, which is included in the record, is the only reference the parties' provide as evidence of the existence of this section of the policy.  As both parties have cited the same section of the policy, we find that it is not in dispute and accept it as true. 

Plaintiff had two insurance policies with Country Mutual Insurance Company (Country Mutual).  The Country Mutual insurance policies provide a single underinsured motorist coverage limit of $100,000 per person/$300,000 per occurrence.  Richard Martin III was named as an additional insured under both of the policies with Country Mutual.  

Country Mutual policies define an "underinsured motor vehicle" as:

 "[A]ny type of motor vehicle or trailer for

which the sum of all liability bonds or policies at the time of an accident are less than the limit of this insurance." 

The Country Mutual policy also contains an "underinsured motorist endorsement" which states in pertinent part:

"The most we will pay under 
Underinsured

Motorists Coverage
, 
Coverage U
, to any one person is the lesser of:

(1) the difference between the 'each person'

limit of this coverage as shown on the declarations page for this coverage and the amount paid to the 
insured
 by or on behalf of persons or organizations who may be legally responsible for the bodily injury caused by an 
underinsured motor vehicle
; or

(2) the difference between the amount of the

insured's 
damages and the amount paid to the 
insured
 by or on behalf of persons or organizations who may be legally responsible for the bodily injury caused by an 
underinsured motor vehicle
. 

***[T]he maximum amount 
we
 will pay to all

insureds
 is the difference between the 'each occurrence' limit of this coverage as shown on the declarations page and the amount paid to the 
insured
 by or on behalf of persons or organizations who may be legally responsible for the bodily injury caused by an 
underinsured motor vehicle
."

Country Mutual's limit of liability clause provides as follows:

"The Uninsured-Underinsured Motorists limits

of liability shown on the declarations page apply as follows:

a.  The limit of liability for "each person"

is the maximum amount 
we 
will pay for all damages arising out of bodily injury to any one person in any one accident.  That maximum amount includes any claims of other persons for damages arising out of that bodily injury.

The figure listed is the most 
we
 will pay for

any one person in any one accident regardless of the number of 
insureds
, claims made, 
insured vehicles
, premiums shown on the declarations page, or 
uninsured or underinsured
 
motor vehicles
 involved in the accident***."

Following the accident, plaintiff made an appropriate claim and Farmers tendered to plaintiff $100,000, the limit of liability under Richard Martin Jr.'s policy with Farmers.  

On August 17, 1997, plaintiff executed a "Release in Full of All Claims and Rights."  The release provided in pertinent part:

"For and in consideration of the sum of ONE

HUNDRED THOUSAND ($100,000) DOLLARS, receipt of which is hereby acknowledged, I, THERESA MARTIN, Individually and as Special Administrator of the Estate of Richard James, Martin, III, Deceased, release and forever discharge RICHARD MARTIN, JR., his principals, agents, representatives and insurance carriers from any and all rights, claims, demands, and damages of any kind, known or unknown, existing or arising in the future, resulting from or related to personal injuries, death or property damage, arising from an accident that occurred on or about March 7, 1997, ***."

When Farmers and Country Mutual refused plaintiff's demand for additional benefits, plaintiff filed a complaint for declaratory judgment and asserted that Farmers was obligated to pay $100,000 in underinsured motorist coverage and Country Mutual was obligated to pay $200,000 in underinsured motorist coverage.  Plaintiff also argued that both defendants unreasonably and vexatiously delayed settlement in violation of section 155 of the Illinois Insurance Code. 

Country Mutual filed a motion to dismiss plaintiff's declaratory judgment action pursuant to section 2-615 of the Code of Civil Procedure.  Country Mutual argued that plaintiff's complaint should be dismissed because it failed to allege: 1) that the underlying occurrence was caused by an underinsured motorist; 2) the existence of and the amount of coverage of any liability policy covering the alleged underinsured motorist; 3) that any liability bonds or policies available to an alleged underinsured motorist have been exhausted by judgments or payments as required by the Country Mutual insurance policy; and 4) that Country Mutual was guilty of "vexatious and unreasonable" delay.

Farmers also filed a motion to dismiss plaintiff's complaint pursuant to section 2-619 of the Code of Civil Procedure.  Farmers argued that: 1) plaintiff is not entitled to underinsured motorist benefits because the vehicle operated by the tortfeasor, Richard Martin Jr., was not underinsured; 2) plaintiff's loss of society claim is subject to per person limits of liability; 3) plaintiff released Farmers from all liability and as special administrator of her husband's estate, signed a release of all claims and rights she may have had arising from the accident. 

Plaintiff subsequently filed an amended complaint for declaratory judgment to include the allegation that Richard Martin III's death was caused by the negligence of his father, who was an insured motorist with Farmer's and sought damages in the amount of $100,000.    

Plaintiff also submitted the affidavit of one her attorneys, who averred that at the time the settlement was entered into and the release was executed, the parties were still negotiating plaintiff's claim for additional benefits under the liability provision of the policy Farmers issued to Robert Martin Jr. Therefore, plaintiff did not intend to release her underinsured motorist claim. 

Brian Morris, a claims representative for Farmers, averred that he handled plaintiff's bodily injury claim and the execution of the release.  Morris stated that the payment of the $100,000 was intended to resolve all disputes that existed between Farmers and plaintiff.  Morris averred that at no time prior to settlement and execution of the release was he negotiating on behalf of Farmers for additional coverage under the underinsured motorist coverage portion of the policy. 

On March 23, 1999, the trial court granted defendants' respective motions to dismiss plaintiff's action for declaratory relief.  The court found that there was no gap between the amount of Richard Martin Jr.'s liability coverage and plaintiff's underinsured motorist coverage, therefore, plaintiff had no valid underinsured motorist claim against Farmers.  The court also found that there was no ambiguity in the underinsured motorist provisions for either policy, therefore, stacking was prohibited.  The court further determined that because there was a 
bona
 
fide
 dispute over coverage, defendants were not liable for "vexatious and unreasonable" delay under section 155 of the Insurance Code.  Plaintiff filed a motion for reconsideration which the trial court denied.  Plaintiff now appeals.

When ruling on a motion to dismiss under either section 2-615 or section 2-619 of the Code of Civil Procedure, the circuit court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party.  The court should grant the motion only if the plaintiff can prove no set of facts that would support a cause of action.  
Gouge v. Central Illinois Public Service Co.
, 144 Ill. 2d 535, 542, 582 N.E.2d 108 (1991).  Because this process does not require the court to weigh facts or determine

credibility, a reviewing court does not give a circuit court's judgment deference, but instead reviews the matter 
de
 
novo
.  
Toombs v. City of Champaign
, 245 Ill. App. 3d 580, 583, 615 N.E.2d 50 (1993).

We first address whether Richard Martin Jr.'s vehicle satisfies the definition of an underinsured motor vehicle.  In examining whether the vehicle is underinsured, we must look to Farmers' insurance policy and the underinsured motor vehicle provision contained within the Illinois Insurance Code.

Section 143a-2(4) of the Illinois Insurance Code defines an underinsured motor vehicle as follows: 

"For the purpose of this Code the term

'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance polices or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured motorist coverage provided the insured as defined in the policy at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured vehicle.  However, the maximum amount payable by the underinsured motorist coverage carrier shall not exceed the amount by which the limits of the underinsured motorist coverage exceeds the limits of the bodily injury liability insurance of the owner or operator of the underinsured motor vehicle."  215 ILCS 5/143a-2(4) (West 1998).

The purpose of underinsured coverage is to furnish protection for the difference between the insured's claim and the amounts available from the underinsured driver.  
Susler v. Country Mutual Insurance Co.
, 147 Ill. 2d 548, 556, 591 N.E.2d 427 (1992).  Thus, section 143(a)-2(4) must be construed to allow an insured to "fill the gap" between the benefits paid by the tortfeasor's insurance carrier and the limit of underinsurance coverage specified in the insured's policy.  
Koperski v. Amica Mutual Insurance Co.
, 287 Ill. App. 3d 494, 498, 678 N.E.2d 734 (1997).  

Richard Martin Jr.'s policy with Farmers states that his underinsured motorist coverage is limited to $100,000 per person.  However, plaintiff asserts that she is not limited to this amount of liability coverage.  Rather, plaintiff argues that coverage is available for the margin between that amount received by plaintiff from the underinsured motorist and the actual damages she is entitled to recover.  In support of her contention, plaintiff relies on 
McKinney v. American Standard Insurance Co.
, 296 Ill. App. 3d 97, 694 N.E.2d 200 (1998).  In 
McKinney
, the policy limits of liability provision stated: 

"[A]ny amounts payable will be reduced by:

1. A payment made or amount payable

by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an underinsured motor vehicle."  
McKinney
, 296 Ill. App. 3d at 99.  

The policy also defined an underinsured motor vehicle as one with "a liability *** policy *** which provides bodily injury liability limits 
less than the damages
 an uninsured person is legally entitled to recover."  (Emphasis added.)   

The issue before the court was whether the term "amounts payable" referred to the total amount of damages legally due the plaintiff or the plaintiff's underinsured policy limits of $50,000.  The plaintiff contended that the policy language required the defendant to pay the full amount of compensatory damages less the amount paid by the tortfeasor and his insurer.  The defendant asserted that the policy language did not require compensation for the full amount of damages.  This court held that because the language of the defendant's policy provided that it would pay all compensable damages, the plaintiff's reasonable expectation would be that "amounts payable" was equivalent to the total damages incurred.  
McKinney
, 296 Ill. App. 3d at 101.  The court went on to hold that because the policy provisions were susceptible to more than one reasonable interpretation, and the term "amounts payable" was ambiguous, coverage for the underinsured motorist policy was available for the margin between the amount the plaintiff received from the underinsured and the actual damages the plaintiff was entitled to recover.  
McKinney
, 296 Ill. App. 3d at 102-103. 
McKinney
 is clearly distinguishable from the case at bar.

Here, unlike 
McKinney
, the policy language is very similar to the language in section 143a-2(4) of the Illinois Insurance Code. As such, there is no ambiguity in the policy.  An examination of the potential coverage establishes that the gap to be covered would be between the amount of the underinsured motorist coverage ($100,000) and the amount of the tortfeasor's policy ($100,000).  As plaintiff received $100,000 from Farmers, which was the stated coverage amount in the Farmers policy and the amount of plaintiff's coverage in the Country Mutual policy, we hold that there is no gap in coverage and Richard Martin Jr.'s vehicle is not underinsured.   Plaintiff next argues that the trial court erred in prohibiting her from stacking the underinsured motorist coverage under the two policies issued to her by Country Mutual and Richard Martin Jr.'s policy with Farmers.  

Plaintiff first asserts that because she and Richard Martin III maintained separate Country Mutual policies and paid separate premiums, the reasonable expectation of these parties was that they would secure payment of underinsured motorist benefits where damages in excess of any liability coverage were sustained.  Plaintiff argues that under this reasonable expectation, she can "stack" the $100,000 limit of each of the two County Mutual policies for a total underinsured motorist limit of $200,000.

Regarding the Farmer's policy, plaintiff asserts that because Richard Martin Jr. paid separate premiums for his underinsured motorist coverage and his bodily injury coverage, Farmers is not allowed to set off amounts paid under the bodily injury section against the underinsured motorist section of the same policy.

Antistacking provisions in insurance policies are unenforceable when the language employed is unclear or ambiguous.  
Grzeszczak v. Illinois Farmers Insurance Co.
, 168 Ill. 2d 216, 220, 659 N.E.2d 952 (1995).  If an insurance clause is ambiguous, it must be construed in favor of the insured.  
Grzeszczak
, 168 Ill. 2d at 223.  However, if a clause is unambiguous, there is no need for construction, and it must be enforced according to its terms.  
Grzeszczak
, 168 Ill. 2d at 223.

Section 143a-2(5) of the Illinois Insurance Code governs antistacking provisions in insurance policies and provides in pertinent part:

"Nothing herein shall prohibit an insurer from

setting forth policy terms and conditions which provide that if the insured has coverage available under this Section under more than one policy or provision of coverage, any recovery or benefits may be equal to, but may not exceed, the higher of the applicable limits of the respective coverage, and the limits of liability under this Section shall not be increased because of multiple motor vehicles covered under the same policy of insurance.  215 ILCS 5/143a-2(5) (West 2000).

Country Mutual's policy contains the following antistacking provision:

"If this policy and any other vehicle

insurance policy issued to you or a relative by one of our companies apply to the same accident, the maximum amount of our liability under all the policies will not exceed the highest applicable limit of liability under any one policy." 

Farmers policy also contains an antistacking provision:

"The limits provided by this policy may not be

stacked or combined with the limits provided by any other policy issued to you or a family member or any member of the Farmers Insurance Group of Companies." 

Plaintiff argues that when Country Mutual's and Farmer's antistacking provisions are read in conjunction with the insured's reasonable expectations, a latent ambiguity exists which must be resolved in the insured's favor.  Plaintiff relies on several cases to support her contention that the antistacking provisions in each of the respective insurance policies are ambiguous.   

Plaintiff cites 
Glidden v. Farmers Automobile Insurance Association
, 57 Ill. 2d 330, 312 N.E.2d 247 (1974) and 
Gibbs v. Madison Mutual Insurance Co.
, 242 Ill. App. 3d 147, 610 N.E.2d 143 (1993).  Both of these cases are factually distinguishable from the case at bar.  Contrary to the instant case, which concerns an underinsured motorist claim, 
Glidden
 involved an uninsured motorist claim.  
Glidden
, 57 Ill. 2d at 331.  
Gibbs
 involved multiple plaintiffs.  The limit of liability clause at issue in 
Gibbs
 limited coverage to the highest of two or more policies issued by the same company which created an ambiguity where two vehicles were insured under the same policy.  
Gibbs
, 242 Ill. App. 3d at 152-153.    It is unclear from plaintiff's argument where she finds an ambiguity in either Farmers' or Country Mutual's policy.  Plaintiff argues that under the "premium rule", the reasonable expectation when she purchased the underinsured motorist coverage from Country Mutual and paid separate premiums was that she was securing coverage to meet any discrepancy between the liability coverage of the at fault driver and the total damages sustained.  

It is well settled that the premium rule is a rule of construction and should not be applied unless an ambiguity exists in the amount of coverage intended.  
Grzeszczak
, 168 Ill. 2d at 229.  As we find no ambiguity in the Country Mutual clauses at issue, application of the premium rule is unnecessary.  

Regarding Farmers policy, as Farmers points out, plaintiff fails to explain how Farmers policy is ambiguous. Plaintiff merely argues that the following policy language, "we will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by the insured person", read in conjunction with the limit of liability clause stated above creates an ambiguity with the result that coverage is treated as if no limits of liability clause existed in the policy and the claimants were permitted to stack coverage.  As plaintiff fails to allege any particular ambiguity in the policy, we find the provisions to be clear.  Absent any ambiguity in either Country Mutual's or Farmers' policy, we hold that the antistacking provisions are enforceable

as written. 

In light of our holdings that Richard Martin Jr.'s vehicle was not underinsured and that plaintiff is prohibited from stacking underinsured coverage, it is unnecessary to address the effect of the release plaintiff executed after receiving the $100,000 liability limit of Farmers insurance policy.  However, we choose to address it and hold that the release was intended to include any further claims, including plaintiff's underinsured motorist claim.   Farmers argues that plaintiff executed the written release after accepting the $100,000 per person liability limit of Farmers policy with Richard Martin Jr.  Farmers asserts that the release indicates plaintiff's intent to release Richard Martin Jr. and Farmers from any and all further claims.  Plaintiff responds that the release she executed was not intended to include the underinsured motorist claim.  

The scope and effect of a release is controlled by the intention of the parties.  
Carlile v. Snap-on Tools
, 271 Ill. App. 3d 833, 837, 648 N.E.2d 317 (1995).  This intent is "discerned from the language used and the circumstances of the transaction."  
Carona v. Illinois Central Gulf R.R. Co.
, 203 Ill. App. 3d 947, 951, 561 N.E.2d 239 (1990).  A release cannot be construed to include claims not within the contemplation of the parties.  
Carona
, 203 Ill. App. 3d at 951.  Where there are only words of a general release, the release will be restricted to the thing or things intended to be released and will not interpret generalities so as to defeat a valid claim not then in the minds of the parties.  
Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center
, 137 Ill. App. 3d 294, 304, 484 N.E.2d 841 (1985).   

Here, we hold that the underinsured motorist claim was within the scope of the language of the release.  The claims to be released are described in comprehensive language as "any and all rights, claims, demands, and damages of any kind, known or unknown, existing or arising in the future, resulting from or related to personal injuries, death or property damage arising from an accident that occurred on or about March 7, 1997."  Plaintiff's attorney averred that releasing the underinsured motorist claim was not within the contemplation of the parties and urges us to rely on the fact that the release did not expressly enumerate this claim.  Regardless of what plaintiff's intent was, as evidenced by her attorney's affidavit, whether the release encompassed the underinsured motorist claim is determined by the language of the release.

Plaintiff next contends that her loss of society claim constitutes a separately compensable injury subject to its own per person limits of defendant Farmer's uninsured motorist policy.  Farmer's policy states the following in pertinent part: 

"The uninsured motorist bodily injury limit

for each person is the maximum we will pay for all damages resulting from bodily injury sustained by one person in any one accident or occurrence.  Included in this limit, but not as a separate claim or claims, are all the consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow and emotional distress."   

In support of her contention, plaintiff specifically relies on 
Stearns v. Millers Mutual Insurance Association of Illinois
, 278 Ill. App. 3d 893, 663 N.E.2d 517 (1996).  Plaintiff urges us to find that our decision in 
Stearns
 controls the outcome of this case because the provisions in the insurance policy at issue in 
Stearns
 were similar to the provisions in Farmers policy here.  Plaintiff asserts that in 
Stearns
, this court construed similar policy language and held that the higher per occurrence limit applied to multiple wrongful death claims arising from the death of the plaintiff's decedent.  In so holding, this court further determined that the policy language was ambiguous.  
Stearns
, 278 Ill. App. 3d at 897.  The language provided that:

"The limit of liability shown in the Schedule

or in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident."  
Stearns
, 278 Ill. App. 3d at 895.    

We find that plaintiff's reliance on 
Stearns
 is misplaced.  First, 
Stearns
 involved uninsured motorist coverage applicable to three separate insureds.  This court found that the insurance provisions in 
Stearns
 could reasonably be interpreted to mean that the insured's mother and sister were each entitled to receive their own policy limit of $100,000 as "compensatory damages" for the loss of consortium because of the "bodily injury" of the insured daughter/sister who died in the accident.  
Stearns
, 278 Ill. App. 3d at 899.      

As Farmers points out, 
Stearns
 was expressly overruled by 
McKinney v. Allstate Insurance Co.
, 188 Ill. 2d 493, 722 N.E.2d 1125 (1999).  
McKinney
 held that 
Stearns
' interpretation of the policy language at issue was reached only by editing the language of the policy to remove all of the language surrounding the term "each person."  
McKinney
, 188 Ill. 2d at 499.  
McKinney
 further held the following: 

"The policy at issue in 
Stearns
 clearly and

unambiguously limited all damages arising out of bodily injury to one person in one motor vehicle accident to a single $100,000 limit of liability and expressly defined 'damages' as including 'damages for care and loss of services or death.'  Because the 
Stearns
 court found an ambiguity where none existed, we hereby overrule that decision."  
McKinney
, 188 Ill. 2d at 499-500.

Here, we hold that the Farmer's policy language is clear and unambiguous.  The policy clearly states that the per person limit of liability applies to "all damages."  "Included in this limit, but not as a 
separate claim or claims
 are all the consequential damages sustained by other persons, such as *** loss of society."  (Emphasis added).  This holding is consistent with previous Illinois cases which hold that loss of consortium is a derivative claim to the direct injury that causes it and as a result, is generally included and subject to the policy limitations for bodily injury to one person.  
Schweigart v. Standard Mutual Insurance Co.
, 227 Ill. App. 3d 249, 591 N.E.2d 121 (1992); 
Berutti v. State Farm Mutual Auto Insurance Co.
, 288 Ill. App. 3d 997, 1001, 682 N.E.2d 216 (1997); 
Economy Preferred Insurance Co. v. Ingold
, 302 Ill. App. 3d 360, 362-63, 707 N.E.2d 985 (1998).

Plaintiff lastly contends that she should recover damages from defendants for "vexatious and unreasonable" delay in settling her claims pursuant to section 155 of the Illinois Insurance Code (210 ILCS 5/155 (West 1998)).  Plaintiff argues that such penalties may not be determined as a matter of law because the relevant factors cannot be determined on the pleadings.  Defendants respond that since a legitimate coverage dispute is at issue, plaintiff has not stated a claim for damages under section 155 of the Insurance Code.

Section 155 of the Insurance Code provides in pertinent part:

"*** (1) In any action by or against a company

wherein there is in issue the liability of a company or a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:

(a) 25% of the amount which the

court or jury finds such party is entitled to recover against the company, exclusive of all costs;

(b) $25,000;

(c) the excess of the amount which

the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action."  215 ILCS 5/155 (West 1998).

Section 155 of the Illinois Insurance Code provides a remedy for an insured who encounters unnecessary difficulties when an insurer withholds policy benefits.  
Bedoya v. Illinois Founders Insurance Co.
, 293 Ill. App. 3d 668, 679, 688 N.E.2d 757 (1997).  However, a defendant cannot be liable for section 155 relief where no benefits are owed.  
O'Rourke v. Access Health, Inc.
, 282 Ill. App. 3d 394, 406, 668 N.E.2d 214 (1996).  

In the present case, plaintiff's amended complaint for declaratory judgment contained no factual allegations other than that "defendants be ordered and directed to pay reasonable attorney fees to plaintiff as a result of the conduct of the defendants in failing to honor the claim of the plaintiff."  Plaintiff's complaint never alleged that defendants could be liable for section 155 relief even if they were not liable under the policy.  As defendants owed no further benefits to plaintiff under their respective policies, defendants could not have committed the vexatious and unreasonable conduct necessary for section 155 relief.

Based upon the foregoing reasons, the judgment of the circuit court of Cook County granting defendants' motions to dismiss plaintiff's amended complaint for declaratory relief is affirmed.

Affirmed. 

HARTMAN and THEIS, JJ., concur.