2019 IL App (1st) 180806-U

No. 1-18-0806

Third Division
December 31, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| RITCHIE CAPITAL MANAGEMENT, LLC; RITCHIE CAPITAL MANAGEMENT, SECZ, LTD.; RHONE HOLDING II, LTD.; RITCHIE MULTI-STRATEGY TRADING, LTD.; RITCHIE MULTI-STRATEGY GLOBAL, LTD.; RITCHIE MULTI-STRATEGY GLOBAL TRADING, LTD.; RITCHIE MULTI-STRATEGY GLOBAL TRADING LLC.; RITCHIE MULTI-STRATEGY (CAYMAN), LTD.; RITCHIE STRUCTURED MULTI-MANAGER, LTD.; RITCHIE MULTI-MANAGER TRADING, LTD.; RCM ARIES HOLDING, LTD.; RITCHIE RML TRADING, LTD.; AND RTL OPTIONS, LTD., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. No. 17 L 4875 Honorable Thomas Mulroy, Judge, presiding. |
| Plaintiffs-Appellants, | ) ) ) | |
| v. | ) ) | |
| MCGLADREY & PULLEN, LLP, RSM MCGLADREY, INC., SIMON LESSER AND HAROLD ALAN KATZ, | ) ) ) ) | |
| Defendants (McGladrey & Pullen, LLP, RSM McGladrey, Inc., and Simon Lesser, Defendants-Appellees). | ) ) ) | |

JUSTICE COBBS delivered the judgment of the court.

Presiding Justice Ellis and Justice Howse concurred in the judgment.

**O R D E R**

¶ 1    *Held*:    The statutory period for raising plaintiffs' claims was not tolled by application of the Bankruptcy Code's automatic stay provisions, nor by a court order or injunction. Thus, the circuit court properly dismissed plaintiffs' claims as time barred under the statute of limitations.

¶ 2    Plaintiffs appeal the circuit court's order dismissing their nine-count complaint against defendants for accounting malpractice as time barred under the statute of limitations. Plaintiffs assert that they could not file their accounting malpractice claim due to the automatic stay provisions of a separate bankruptcy case in which the parties of this appeal were associated. Accordingly, plaintiffs maintain that the applicable time period for bringing their malpractice claims was tolled and contend that they timely filed their complaint once the bankruptcy proceedings were resolved. For the reasons set forth below, we affirm the order of dismissal.

¶ 3                                            I. BACKGROUND

¶ 4    Plaintiffs are a group of investment companies and entities who invested in an assortment of hedge funds collectively known as the Lancelot Funds. The Lancelot Funds were run by Greg Bell and purported to invest in short-term trade notes and purchase order financing. The Lancelot Funds focused their portfolio on notes issued by the Petters Company, Inc. However, in 2008, the Petters Company, Inc. filed for Chapter 11 Bankruptcy following the arrest of Thomas Petters on federal fraud and money laundering charges. Shortly after, the Lancelot Funds cancelled all requests for redemption of investment and filed for Chapter 7 Bankruptcy.

¶ 5                                    A. The Bankruptcy Proceedings

¶ 6    The Lancelot Funds filed for bankruptcy on October 20, 2008, and a trustee was appointed to gather the property of the estate, liquidate it, distribute the proceeds to creditors, and close

the debtors' estate. At the same time as the bankruptcy filing was proceeding, several investors filed lawsuits related to the Lancelot Funds seeking recovery from Defendant McGladrey and others. However, the bankruptcy trustee sought an injunction invoking section 541(a)(1) of Title 11 of the United States Code ("the Bankruptcy Code"), 11 U.S.C. § 541(a)(1), and alleging that claims against McGladrey were the property of the bankruptcy estate and therefore subject to the automatic stay provisions of section 362 of the Bankruptcy Code, 11 U.S.C. § 362(a)(3). See *In re Lancelot Investors Fund, L.P.*, 408 B.R. 167 (Bankr. N.D. Ill. 2009). Plaintiffs were not among the investors subject to this action by the trustee. Many of the investors reached an agreement with the trustee and were dismissed from the injunction action. *In re Lancelot Investors Fund, L.P.*, 408 B.R. at 169. However, one group of investors, referred to as McKinley, continued with their state court suit against McGladrey for professional malpractice and negligent misrepresentation alleging that McGladrey's lack of due diligence resulted in the failure to discover Petters Ponzi scheme. *Id*. at 171.

¶ 7 On July 17, 2009, the bankruptcy court enforced the automatic stay provisions of section 362(a)(3), ruling in the trustee's action that McKinley's claims against McGladrey were property of the bankruptcy estate. *Id*. at 172. The bankruptcy court found that the alleged harms in McKinley's complaint were general claims that affected many creditors, not just McKinley, and therefore were property of the bankruptcy estate. *Id*. The bankruptcy court noted that bankruptcy procedures provide for claimants like McKinley to pursue its claim only if the trustee abandons the suit and the bankruptcy court grants permission to the claimant to prosecute the cause of action on behalf of the estate. *Id*. at 173. Citing section 554 of the Bankruptcy Code, the court noted that, "[p]roperty of the estate that is not administered or abandoned by the trustee remains property of the estate until the bankruptcy case is closed"

and that any party to the bankruptcy can seek court action to compel the trustee to pursue the cause or abandon the claim. *Id*. at 173; see also 11 U.S.C. § 554.

¶ 8    Additionally, the bankruptcy court stated that the trustee would also be entitled to injunctive relief even if the claims were not considered a part of bankruptcy estate because such claims were substantially related to the estate. *In re Lancelot Investors Fund, L.P.*, 408 B.R. at 174. The court cited its general powers under section 105 of the Bankruptcy Code which provides that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105. The court then compared the trustee's action against McKinley to *Fisher v. Apostolou*, 155 F.3d 876 (7th Cir. 1998), where a Chapter 7 trustee enjoined third parties from pursuing fraud claims against another third-party non-debtor that the trustee had an adversary proceeding against in the bankruptcy court. The bankruptcy court found that the substantial overlap between the trustee's investigation and McKinley's claims, in addition to the fact that a favorable judgment for McKinley would affect the amount of property available for distribution to creditors of the bankruptcy estate, made the case analogous to *Fisher*. *In re Lancelot Investors Fund, L.P.*, 408 B.R. at 174. Thus, injunctive relief, as provided for under the bankruptcy court's section 105 general powers, was warranted in order to promote the general policies of bankruptcy and an orderly administration of the bankruptcy estate. *Id*. at 175. The injunction order was dissolved on September 15, 2015.

¶ 9    B. The Complaint

¶ 10      Plaintiffs' complaint alleged that from 2003 through 2008, the Lancelot Funds contracted defendants[1] to perform annual audits and provide financial statements to potential and actual investors. Defendant Simon Lesser is a certified public accountant who served as a managing director of Defendant RSM McGladrey, Inc. and was a partner of Defendant McGladrey & Pullen, LLP during this time. Defendant Harold Allen Katz[2] was initially a senior manager or director of the audit team at McGladrey and later worked as vice president of finance and accounting for a management company related to the Lancelot Funds.

¶ 11      Plaintiffs alleged that a former employee of Ritchie Capital had spoken with Lesser in 2005 over a series of phone calls regarding defendants' audit work. Lesser allegedly represented to the employee that there were "no anomalies" with the Lancelot Funds. Lesser also stated that his accounting firm was confirming the underlying receivables from the Lancelot Funds' investments and confirming the existence of the actual goods. Plaintiffs further alleged that Bell had provided plaintiffs with documents including McGladrey's annual audit opinions in order to solicit their investments. Plaintiffs asserted that McGladrey knew the work performed by them on behalf of the Lancelot Funds would be used to influence potential investors. Moreover, Plaintiff Rhone Holdings II, Ltd. also retained McGladrey to conduct annual audits from 2006 through 2013.

¶ 12      Count I alleged that McGladrey engaged in negligent misrepresentation, failed to conduct its audits in accordance with professional accounting standards, and misled plaintiffs by

---

[1] The complaint refers to "Defendants AM&G and AM&G Cayman" who were retained in 2003 by the Lancelot Funds to conduct external audits before stating that McGladrey acquired assets of AM&G around 2006, including the audit team assigned to the Lancelot Funds. Defendants Lesser and Katz were alleged to be a part of this audit team at AM&G and later, McGladrey. There is no record of service on a party named AM&G or AM&G Cayman.

[2] Katz is not a party to this appeal and the record reflects that summons were issued but never served on Katz.

knowingly or recklessly representing facts about the security of plaintiffs' investments in the Lancelot Funds, resulting in plaintiffs' failure to redeem their investment funds in a timely matter. Count II alleged similar deficiencies in McGladrey's actions but alleged that such actions were committed knowingly and constituted fraudulent misrepresentation, again preventing plaintiffs from realizing the truth of the Lancelot Funds and timely redeeming their investment. Count III alleged that McGladrey engaged in common law fraud by knowingly including false statements in their annual audits of the Lancelot Funds with the purpose of inducing plaintiffs into believing Bell's representations and to keep their investment in the Lancelot Funds. Count IV alleged that McGladrey fraudulently concealed information about the assets of the Lancelot Funds on the annual audits. Each of these counts stated that plaintiffs sought relief for damages in excess of $100 million.

¶ 13     Count V raised allegations stemming from the Rhone transaction that only a subset of plaintiffs took part in, where they retained a third party to conduct a valuation of the investment shares for sale. Plaintiffs alleged that the third-party valuation was based on the audit and financial statements prepared by McGladrey. Plaintiffs assert that the shares later sold were overvalued, creating a $50 million liability for the plaintiffs involved in the Rhone transaction in addition to collateral damages totaling an additional $44 million. Plaintiffs assert that McGladrey's actions in relation to this transaction constituted fraudulent concealment, where McGladrey knew the actual value of the shares was zero, and sought damages for the $94 million in liability arising from the transaction.

¶ 14     Counts VI and VII alleged that McGladrey was liable for aiding and abetting the Lancelot Funds and engaged in a civil conspiracy with all defendants and Bell, where McGladrey conducted reckless or fraudulent annual audits, provided documentation confirming Bell and

the Lancelot Funds fraudulent conduct, and was aware that it played a role in the Lancelot Funds scheme. Count VII also asserted the Katz had pled guilty in federal court to conspiracy to commit wire fraud and sentenced to federal prison. In these two counts, plaintiffs also alleged and sought relief for damages in excess of $100 million.

¶ 15    Count VIII alleged that McGladrey was in breach of contract, for failing to uphold the terms of engagement letters between McGladrey and plaintiffs and to inform plaintiffs of the apparent fraud and conduct audits in accordance with professional standards. For this count, again plaintiffs alleged and sought relief for damages in excess of $100 million.

¶ 16    Lastly, Count IX was asserted by Plaintiff Ritchie Multi-Strategy Global Trading, LLC and alleged that McGladrey and RMS McGladrey, Inc. violated the Illinois Consumer Fraud Act where defendants' actions constituted "unfair or deceptive" practices under the Fraud Act and also were to be considered "continuing violations" such that the statute of limitations had not run. Plaintiffs only alleged $100,000 in damages in relation to this count.

¶ 17                                    C. Dismissal

¶ 18    Plaintiffs filed their complaint on May 12, 2017. Defendants sought dismissal under section 2-619.1 of the Illinois Code of Civil Procedure (the "Illinois Code"), which allows for combined motions. 735 ILCS 5/2-619.1 (West 2016). Defendants first asserted that dismissal was appropriate under section 2-619(a)(5) of the Illinois Code (735 ILCS 5/2-619(a)(5) (West 2016)), where the applicable two-year statute of limitations and five-year statute of repose barred plaintiffs' claims from proceeding after more than nine years had passed since the alleged acts had occurred. Defendants also sought dismissal under section 2-615 of the Illinois Code (735 ILCS 5/2-615 (West 2016)) as well, contending that two of the named plaintiffs were entities that no longer existed and lacked standing to sue and, moreover, plaintiffs had

failed to allege with particularity any duty owed to plaintiffs by McGladrey and the proximate cause between plaintiffs' losses and McGladrey's actions.

¶ 19       The circuit court dismissed plaintiffs' complaint with prejudice on December 6, 2017 under section 2-619(a)(5), finding that plaintiffs were required to bring their claims against defendants as soon as they were put on notice of the wrongdoing in 2008. The circuit court rejected plaintiffs' assertion that the automatic stay provisions of the Bankruptcy Code applied to McGladrey because McGladrey was not the party filing for bankruptcy. The court further found that the bankruptcy court's injunction order contained no language enjoining plaintiffs' claims or extending the stay and injunction against McKinley to all other creditors. Thus, the court found that plaintiffs had sat on their rights by failing to file their suit earlier and present the court with the opportunity to stay the case. Plaintiffs filed a motion to reconsider, which was denied on March 12, 2018.[3]

¶ 20                                II. ANALYSIS

¶ 21       Plaintiffs argue that their filing on May 12, 2017, was timely because the statute of limitations and statute of repose were tolled from October 20, 2008 until September 15, 2015. Plaintiffs assert that these statutes were tolled due to the Lancelot Funds bankruptcy filing. As a result of the bankruptcy filing, plaintiffs maintain that all causes of action against McGladrey arising out of its audits of the Lancelot Funds were considered property of the bankruptcy estate and prohibited by the Bankruptcy Code's automatic stay provisions. Plaintiffs assert that the application of the Bankruptcy Code's automatic stay provisions operated as a statutory prohibition which brought their claims under section 13-216 of the Illinois Code (735 ILCS

---

[3] The transcript from the hearing on the original motion to dismiss was not included in the record on appeal. This court only reviewed the transcript from the hearing on the motion to reconsider.

5/13-216 (West 2016)) and tolled the statute of limitations. Plaintiffs reject the circuit court's consideration of whether McGladrey filed bankruptcy because McGladrey is not required to file for bankruptcy in order to have claims against them considered as part of the Lancelot Fund's bankruptcy estate. Plaintiffs further reject the circuit court's conclusion that they should have filed suit regardless of the automatic stay provisions to "give the court an opportunity to stay." Plaintiffs take the position that because the suit would have been found void *ab initio* filing would have exposed them to possible sanctions.

¶ 22    A section 2-619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters that defeat the claim. *Cohen v. McDonald's Corp.*, 347 Ill. App. 3d 627, 632 (2004). In reviewing the dismissal of a cause of action under section 2-619, this court accepts as true the well-pleaded allegations of the plaintiff's complaint and the evidentiary facts in a defendant's supporting affidavit which have not been refuted in a counter-affidavit of the plaintiff. *Board of Managers of the Village Centre Condominium Association v. Wilmette Partners*, 198 Ill. 2d 132, 134 (2001); *Kawaguchi v. Gainer*, 361 Ill. App. 3d 229, 236 (2005). A trial court's ruling on a 2-619 motion is reviewed *de novo*. *Martin v. Illinois Farmers Insurance*, 318 Ill. App. 3d 751, 757 (2000).

¶ 23    The applicable statute of limitations is provided by section 13-214.2 of the Illinois Code, which gives a claimant two years from the time they knew or reasonably should have known of the act or omission in the accountant's professional service that gave rise to their cause of action. 735 ILCS 5/13-214.2(a) (West 2016). The statute further provides that "[i]n no event shall such action be brought more than 5 years after the date on which occurred the act or omission[.]" 735 ILCS 5/13-214.2(b) (West 2016). Section 13-216 of the Illinois Code states, "[w]hen the commencement of an action is stayed by injunction, order of a court, or statutory

prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action." 735 ILCS 5/13-216 (West 2016). Accordingly, although the complaint alleges acts and omissions occurring as early as 2003, plaintiffs contend that the statute of limitations and the statute of repose as proscribed by section 13-214.2 were tolled under section 13-216 until September 2015 when the bankruptcy injunction was dissolved.

¶ 24    As summarized earlier, the bankruptcy court in *In re Lancelot Investors Fund, L.P.* provided two justifications for staying McKinley's suit against McGladrey from proceeding: the automatic stay provisions under section 362(a)(3) of the Bankruptcy Code and the court's general injunction powers under section 105 of the Bankruptcy Code. Plaintiffs rely heavily on this decision and maintain that all causes of action against McGladrey, including theirs, arising out of its audits of the Lancelot Funds were considered property of the bankruptcy estate. Notably, in *Fisher*—the case relied upon by the bankruptcy court to justify use of its section 105 injunction powers—the Seventh Circuit reviewed a bankruptcy court's injunction which prevented a group of defrauded investors, who were creditors of the bankruptcy estate, from pursuing claims against a third-party defendant where the debtor's trustee also sought to pursue similar claims. The court rejected application of an automatic stay, but affirmed the bankruptcy court's use of section 105 injunction powers. *Fisher v. Apostolou*, 155 F.3d 876, 878 (1998).

¶ 25    This distinction is significant as plaintiffs here argue that the Bankruptcy Code's section 362(a)(3) automatic stay triggers the provisions of section 13-216 of the Illinois Code as a statutory prohibition preventing them from filing suit earlier. However, the Seventh Circuit in *Fisher* rejected a bankruptcy court order finding that an automatic stay was triggered under

remarkably similar circumstances. The bankruptcy court, here, also appeared to acknowledge that its ruling for the application of an automatic stay might be rejected; thus, it provided an alternative basis for its 2009 ruling.

¶ 26    The facts in *Fisher,* which we find similar to the case at bar, are worth briefly noting. *In Fisher,* the plaintiffs were defrauded investors who had fallen subject to a "bucket shop," which is similar to a Ponzi scheme, and the entity which touted itself as trading in commodities futures filed for bankruptcy. *Fisher*, 155 F.3d at 877, 879. The plaintiffs voluntarily dismissed the debtors from their claim and continued to proceed in their suit against the third parties, not in bankruptcy, who allegedly committed various acts of fraud against plaintiffs in furtherance of the scheme, only to have the bankruptcy trustee intervene and argue that such claims were property of the bankruptcy estate. *Id*. Consistent with the reasoning in *Fisher*, which rejected the automatic stay provisions, we find that plaintiff's claims here would not be subject to an automatic stay. Consequently, section 13-216 of the Illinois Code was not triggered due to a statutory prohibition by the Lancelot Funds' filing for bankruptcy. That said, we must next consider whether a valid injunction or court order, which are other means for triggering section 13-216, were in force preventing plaintiffs from timely filing suit.

¶ 27    Plaintiffs read the 2009 bankruptcy court order as expressly forbidding all investors from pursuing any such claims against McGladrey while the trustee was doing the same. Plaintiffs disagree with the circuit court's statement that they were "obligated" to file suit upon learning of McGladrey's wrongdoing. They maintain that taking this hard-line position places similarly situated investors in an untenable position because, with knowledge of the bankruptcy proceedings, they could be sanctioned under section 362 of the Bankruptcy Code for violating

the automatic stay. Furthermore, plaintiffs allege that any suit brought would have been void *ab initio* and a waste of time and resources.

¶ 28    Defendants respond that the injunction order in the McKinley suit was narrow and applied only to prevent further prosecution of that particular state court action. Defendants assert that nothing in that order barred the commencement of any future claims by other non-debtor plaintiffs against McGladrey. Defendants argue that plaintiffs' reading of the order is too broad and unwieldy, effectively turning any claims held by a non-debtor plaintiff against a non-debtor defendant into "property" of the bankruptcy estate where the debtor may have a claim against the non-debtor defendant. Defendants also highlight a number of cases brought by other parties involving McGladrey filed after the McKinley injunction order. Most significantly, another set of non-debtor plaintiffs, referred to as the Tradex plaintiffs, initiated a state suit[4] in Illinois after the McKinley injunction was ordered. The bankruptcy court issued another order staying that case, which defendants emphasize was specific only to that suit and did not bar claims by other investors.

¶ 29    Briefly, the Tradex plaintiffs sought redress from a number of defendants including Lancelot Investment Managment, LLC; Gregory Bell; Swiss Financial Services (Bahamas), Ltd.; Swiss Financial Services, Inc.; McGladrey & Pullen LLP; McGladrey & Pullen, Cayman; Altschuler, Melvoin & Glasser, Cayman; Altschuler, Melvoin & Glasser, LLP; and Simon Lesser. The bankruptcy court order filed on August 24, 2010, "preliminarily enjoined" the Tradex plaintiffs' state court action until the close of the bankruptcy case, finding that allowing the suit to proceed would "(a) improperly permit creditors to litigate claims that belong to the bankruptcy estate *** and (b) affect the amount of property in the bankruptcy estate and the

---

[4] Cook County Circuit Court Case No. 2010-CH-13264.

allocation of property among creditors." The bankruptcy court did not enter sanctions against the Tradex plaintiffs.

¶ 30    We thus reject plaintiffs' assertions that, had they filed these claims any earlier, they would be subject to sanctions or waste their resources. Under *Fisher*, plaintiffs' claims are not subject to an automatic stay. Absent application of the automatic stay, the only other justification for not proceeding within the applicable limitations period would have been due to the trustee's properly supported petition for the bankruptcy court's exercise of its section 105 authority.

¶ 31    As demonstrated by the orders involving the McKinley plaintiffs' and the Tradex plaintiffs' claims, section 105 injunctions are case specific. By not filing suit, plaintiffs here provided no opportunity either for the trustee or the bankruptcy court to intervene. Additionally, there was no specific injunction or court order barring their claims. In particular, it should be noted that one of the plaintiffs has a specific claim against McGladrey that is dissimilar from the class of investor claims due to McGladrey's specific audit work, not only on behalf of the Lancelot Funds, but for Plaintiff Rhone Holdings II, Ltd. separately. Accordingly, these are the types of claims the bankruptcy court should have had the opportunity to assess if proceeding on the claim affected the trustee's work on behalf of the bankruptcy estate.

¶ 32    Finally, we note plaintiff's attempt to compare their case to *Garbe Iron Works, Inc. v. Priester*, 99 Ill. 2d 84 (1983). However, we find *Garbe* inapposite. In *Garbe*, the Illinois Supreme Court held that a plaintiff suing on a mechanics lien against two defendants, was not required to file an earlier claim to preserve his cause of action where one of the defendants filed for bankruptcy, and both defendants were necessary parties. *Id*. The court found that the statute of limitations for bringing the mechanics lien was tolled while the defendant was subject to the automatic stay provisions of the bankruptcy code. *Id*. at 89. Here, there is no claim that

any of the named defendants are personally subject to bankruptcy proceedings and the Lancelot Funds, which were in bankruptcy proceedings, are not a necessary party to plaintiffs' claims. Therefore, the holding in *Garbe Iron Works* provides to plaintiffs no support.

¶ 33                                   III. CONCLUSION

¶ 34        For the reasons stated, we affirm the order of the circuit court.

¶ 35        Affirmed.