ILLINOIS FARMERS INSURANCE COMPANY, Plaintiff-Appellee, v. GEORGE TABOR, Special Adm'r of the Estate of Katrina Tabor, Deceased, Defendant-Appellant.

Second District   No. 2—93—0772

Opinion filed October 26, 1994.

Scott H. Rudin, of Anesi, Ozmon & Rodin, Ltd., of Chicago, for appellant.

George W. Brannen and Theodore G. Schuster, both of Casey & Brannen, of St. Charles, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Defendant George Tabor, special administrator of the estate of Katrina Tabor, appeals from summary judgment for plaintiff, Illinois Farmers Insurance Company, in a declaratory judgment action. We affirm.

On the night of November 4, 1989, Katrina Tabor (Katrina), the daughter of George Tabor (Tabor), was killed in a train-car accident in De Kalb. Katrina and her friend, Jamie Tucker, were passengers in a car driven by John Denton. Denton attempted to race across a railroad crossing ahead of an oncoming train. The train struck the car, killing both Jamie and Katrina. John Denton survived.

At the time of the accident, there were two insurance policies applicable to the Denton car. John Denton himself was insured by United States Fidelity and Guaranty (USF&G) on a single-limit, $100,000-per-accident liability policy. The car, owned by Denton's father, was separately insured by USF&G on a single limit, $300,000-per-accident liability policy. The total coverage applicable to the car was, therefore, $400,000.

Following the accident, the estates of Katrina and Jamie each filed wrongful death claims against Denton. USF&G settled these claims on Denton's behalf with payments of $200,000 to each estate, exhausting the policy limits on both of Denton's liability policies. Denton's liability for the deaths of Jamie and Katrina was not an issue in the trial court.

At the time of the accident, Tabor had an automobile insurance policy with Illinois Farmers Insurance Company (Farmers) which included uninsured/underinsured motorist coverage. The payment limits on this policy were $250,000 per person and $500,000 per occurrence. Tabor filed an underinsured motor vehicle (UIM) claim with Farmers based on Katrina's death, claiming that she was an

insured under the policy. He sought payment of $50,000, the difference between the $200,000 he recovered from Denton and the $250,000-per-person limit on his UIM policy with Farmers. Farmers denied the claim on the basis that the Denton automobile was not an underinsured motor vehicle as defined by either the Farmers policy or the Illinois Insurance Code (Insurance Code) (Ill. Rev. Stat. 1991, ch. 73, par. 755a—2 (now 215 ILCS 5/143a—2 (West 1992)), and on the basis that Katrina was not an insured as defined in the policy.

Subsequently, Farmers filed the instant declaratory judgment action seeking a declaration that, under the terms of the policy, it could reject Tabor's UIM claim. After a hearing, the trial court granted summary judgment to Farmers, ruling that because the Denton vehicle carried $400,000 in total liability insurance, and Tabor's UIM policy had a limit of $250,000, Denton's vehicle was not an underinsured motor vehicle under the UIM provision of the Insurance Code. Because it granted summary judgment based on the UIM provision of the Insurance Code, the trial court did not reach the issue of Katrina's status under the policy, and that issue is not before this court.

Tabor makes three principal contentions on appeal. First, he argues that the definition of an underinsured motor vehicle should be determined by comparing the amount actually received by the insured from the tort-feasor with the limit of the insured's UIM policy. Second, he argues in the alternative that an acceptable method for defining an underinsured motor vehicle is to compare the maximum-per-occurrence limits of the insured's UIM policy with the maximum-per-occurrence limits of the tort-feasor's liability policy. Finally, he contends that the Farmers policy in the present case is ambiguous.

The use of summary judgment is appropriate where, as here, there are no questions of fact and judgment can be entered as a matter of law. (735 ILCS 5/2—1005(c) (West 1992); *Banes v. Western States Insurance Co.* (1993), 247 Ill. App. 3d 480, 482.) The construction of the terms of an insurance policy and the effect of the statutory UIM requirements are questions of law appropriate for summary judgment disposition. (*Banes*, 247 Ill. App. 3d at 482.) We review the entry of summary judgment *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.* (1992), 154 Ill. 2d 90, 102.

I

■ The Illinois Insurance Code defines an underinsured motor vehicle as one

     "whose ownership, maintenance or use has resulted in bodily

> injury or death of the insured *** and for which the sum of the limits of liability under all bodily injury liability insurance policies *** applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident." (215 ILCS 5/143a—2(4).)

The statute also provides for the following set-off procedure:

> "The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies *** maintained on the underinsured motor vehicle." 215 ILCS 5/143a—2(4).

Tabor concedes that under the above definition the Denton car was not an underinsured motor vehicle because the "sum of the limits of liability" applicable to it exceeds Tabor's per-person UIM coverage. However, Tabor argues that the above definition, while complete on its face, was not intended to cover, and does not contemplate, a situation where multiple claimants against the tort-feasor's liability policies have exhausted all or part of the payment limits. According to Tabor, in this "multiple claimant" situation, an underinsured motor vehicle is better defined by comparing the amounts actually received by the UIM policyholder from the tort-feasor to the limits of the UIM policy.

The application of Tabor's definition to the present case would require a comparison of the $200,000 Tabor actually received from Denton with the $250,000-per-person limit of Tabor's UIM policy, rendering the Denton car underinsured and permitting Tabor to recover $50,000 from Farmers under the set-off clause of the statute. This result, according to Tabor, is more in keeping with the spirit and purpose of the Illinois UIM statute than the result achieved by strict application of the statutory definition to a multiple claimant situation. In support of his argument, Tabor notes that nothing in the language of the UIM statute or its legislative history affirmatively indicates that it was intended to apply to multiple claimant situations. Further, Tabor points to the "amounts actually recovered" language in the second clause of the quoted statute and suggests this shows a legislative intent that UIM coverage should apply whenever the actual amount recovered from the tort-feasor is less than the limits of the UIM policy.

A situation very similar to the instant case was confronted by the court in *Moriconi v. Sentry Insurance of Illinois, Inc.* (1990), 193 Ill. App. 3d 904. There, the plaintiff was the administrator of the estate

of his daughter and stepdaughter, who were killed in an automobile accident, along with another individual. The tort-feasor's vehicle had $300,000 of total liability coverage, and the plaintiff had an implied limit of $300,000 on his UIM policy. Following the accident, the tort-feasor's insurer paid a $30,000 settlement to the estate of the other victim, allowing plaintiff to recover only $270,000 for his two decedents. *Moriconi*, 193 Ill. App. 3d at 905-06.

The plaintiff in *Moriconi* sought a declaration that section 143a—2(4) and his UIM policy required his insurer to pay the $30,000 difference between the limit of his UIM policy and the $270,000 he actually recovered from the tort-feasor. He argued that the statutory definition of an underinsured motor vehicle was ambiguous with respect to its application to multiple-claimant situations and that it should be interpreted to allow him to obtain the $30,000 difference. This, he argued, was consistent with the intent of the legislature as expressed in the set-off clause of the definition, which focuses on the amounts actually recovered by the insured. *Moriconi*, 193 Ill. App. 3d at 907.

The *Moriconi* court rejected this argument and held that the Insurance Code's definition of an underinsured motor vehicle is not ambiguous. (*Moriconi*, 193 Ill. App. 3d at 908.) The court pointed out that the second clause of the statute, dealing with setoff, only comes into play when there has been an initial determination that the tort-feasor's vehicle is underinsured, as defined by the statute's first clause. (*Moriconi*, 193 Ill. App. 3d at 908.) We agree with this construction of the statute.

It is well established that the legislature has the power to define statutory terms in any reasonable manner. (*Ruva v. Mente* (1991), 143 Ill. 2d 257, 263; *Constantine v. Village of Glen Ellyn* (1991), 217 Ill. App. 3d 4, 16.) Courts have also long recognized that statutory language is the best indication of legislative intent. (*People v. Gassman* (1993), 251 Ill. App. 3d 681, 689.) Tabor adopts the argument advanced by the plaintiff in *Moriconi* and invites us to look beyond the words of the statute. He points to, among other things, a statement made by one of the legislators who voted on the provision and interpretations of UIM provisions in other States. However, where an enactment is clear and unambiguous, a court is not at liberty to depart from the plain language of the statute by reading into it exceptions or conditions the legislature did not express. *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.* (1994), 158 Ill. 2d 76, 83.

■ Although we acknowledge that nothing in the legislative history specifically indicates the legislature considered the effect of

the UIM definition in a multiple-claimant scenario, it is also true that nothing in the legislative history demonstrates the legislature did not intend this definition to apply to such a scenario. In view of the above principles of statutory construction, we agree with *Moriconi*'s conclusion that section 143a—2(4) is unambiguous in its definition of an underinsured motor vehicle. We also concur in *Moriconi*'s interpretation of the interplay between the two clauses in that section. The application of section 143a—2(4) first requires a determination of whether the tort-feasor's vehicle is "underinsured" based on the definition provided. The set-off clause mandating the reduction of UIM payments by the amounts received from the tort-feasor operates only if the tort-feasor's vehicle is classified as underinsured. Our conclusion that this is a correct interpretation is bolstered by the fact that section 143a—2 has twice been amended since the decision in *Moriconi*, and neither of the amendments indicates any dissatisfaction with the construction given the section in that case. See *Independent Voters v. Illinois Commerce Comm'n* (1987), 117 Ill. 2d 90, 99-100.

## II

■ Tabor's second contention is that, assuming we apply the statutory definition of an underinsured motor vehicle, the limit of his UIM coverage should be deemed to be $500,000, the per-occurrence limit, rather than $250,000, the per-person limit. Tabor believes that because his UIM policy is a bi-level $250,000/$500,000 policy, whereas both of the USF&G policies are single-limit policies, it "seems inherently unjust" to compare the $250,000-per-person limit on his UIM policy with the single limit of $400,000 on Denton's USF&G policy. He believes fairness requires that, in this situation, the tort-feasor's maximum coverage be compared to the insured's maximum coverage.

In response, Farmers correctly points out that Tabor's argument is contrary to the express terms of his policy. According to the policy, the $250,000-per-person limit is "the maximum for bodily injury sustained by any person in any one occurrence." Additionally, the policy states that "the bodily injury liability limit for 'each occurrence' is the maximum combined amount for bodily injury sustained by two or more persons in any occurrence." Thus, under the terms of the policy, if one insured is injured, the per-person limit applies; if more than one insured is injured, the per-occurrence limit applies.

Courts have long held that parties to an insurance contract may include within it any provision they desire which does not violate law

or public policy. (*Coronet Insurance Co. v. Ferrill* (1985), 134 Ill. App. 3d 483, 485.) Such provisions must be enforced as they are made without rewriting them or injecting terms upon which the parties have not agreed. (*Coronet*, 134 Ill. App. 3d at 485, citing *Moscov v. Mutual Life Insurance Co.* (1944), 387 Ill. 378, 383.) Tabor does not claim that any insured under his policy other than Katrina was killed in the accident. Given that his claim involves injury to a single person, the maximum claim is the per-person limit of $250,000. To find otherwise would require us to rewrite the insurance policy, which we are not permitted to do. *Coronet*, 134 Ill. App. 3d at 485.

## III

■ Tabor's final contention is that the definition of an underinsured motor vehicle contained in his policy with Farmers is ambiguous. Part II of the Farmers policy is entitled "Uninsured Motorist Coverage (Including Underinsured Motorist Coverage)." Under that heading, paragraph 3b defines an underinsured motor vehicle as one which is:

> "Insured by a bodily injury liability bond or policy at the time of the accident which provides coverage in amounts less than the limits of Uninsured Motorist Coverage shown in the Declarations."

A subsequent section, entitled "Other Insurance," provides for the setoff of amounts received from the tort-feasor:

> "The amount of Uninsured Motorist Coverage we will pay under Additional Definitions 3b shall be reduced by the amount of any other bodily injury coverage available to any party held to be liable for the accident."

Tabor argues that these two sections, read together, are (1) facially ambiguous; and (2) in conflict with the UIM section of the Insurance Code (215 ILCS 5/143a—2(4) (West 1992)). Specifically, Tabor points to the policy's lack of definition for the words "coverage" and "limits" as used in the above-quoted sections. He argues that, because of this ambiguity, these provisions should be construed in his favor.

We agree with Tabor that when an insurance contract can reasonably be said to be ambiguous, it will be construed against the insurer and in favor of the insured. (*Chester v. State Farm Mutual Automobile Insurance Co.* (1992), 227 Ill. App. 3d 320, 325.) However, courts construing insurance policies are bound to afford words their plain and ordinary meaning. (*Crum & Forster Managers Corp. v. Resolution Trust Corp.* (1993), 156 Ill. 2d 384, 391; *Britamco Underwriters, Inc. v. J.O.C. Enterprises, Inc.* (1993), 252 Ill. App. 3d 96, 100.) Further, courts should not exercise their inventive powers to create an ambiguity where none exists or approve the distortion of language

to reach a desired result. *American Standard Insurance Co. v. Allstate Insurance Co.* (1991), 210 Ill. App. 3d 443, 447; see also *Chester*, 227 Ill. App. 3d at 325.

Giving the words "coverage" and "limits" their plain and ordinary meanings, we find no ambiguity in the policy's underinsured motorist provisions. "Coverage" is a term used extensively throughout the Insurance Code. As used in this context, coverage is the amount and extent of risk contractually assumed by an insurer. (Black's Law Dictionary 365 (6th ed. 1990).) Similarly, limits are bounds or restrictions defining the extent of a right conferred. (Black's Law Dictionary 926 (6th ed. 1990).) In the context of the Code and the Farmers policy, the term "coverage" is the amount and extent of risk contractually assumed by Farmers. Similarly, "limits of liability" refers to the "bounds or restrictions" of Farmers' duty to pay, assuming the existence of certain conditions. As Farmers points out, both terms are used repeatedly in the Insurance Code without definition. Applying the plain and ordinary meaning of these terms, we find them unambiguous.

Nor are the policy provisions in conflict with the UIM statute. Although the wording of the policy provisions is not identical to the statute, they substantially track its language. (215 ILCS 5/143a—2(4) (West 1992).) In fact, courts have held that other UIM policy language, bearing less of a resemblance to the language of the UIM statute than the Farmers policy here, substantially duplicates the statute. (See *Harris v. St. Paul Fire & Marine Insurance Co.* (1993), 248 Ill. App. 3d 52, 57.) We therefore conclude that the UIM provisions in the Farmers policy are neither ambiguous nor in conflict with the UIM statute.

For the foregoing reasons, the judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

WOODWARD and COLWELL, JJ., concur.