JOANNA ADAMSKA KOPERSKI, Plaintiff-Appellee, v. AMICA MUTUAL
INSURANCE COMPANY, Defendant-Appellant.

First District (6th Division)   No. 1—96—0046

Opinion filed March 31, 1997.

Brenner & Moltzen, Ltd., of Chicago (Sheldon A. Brenner and Jane E. Reames, of counsel), for appellant.

Topper & Weiss, Ltd., of Chicago (Barry Weiss, of counsel), for appellee.

JUSTICE ZWICK delivered the opinion of the court:

Plaintiff brought this action seeking a declaration of her right to recovery under the underinsured motorist provision contained in the automobile insurance policy issued by defendant, Amica Mutual Insurance Company (Amica). The trial court granted summary judgment in favor of plaintiff, finding that Amica was obligated to provide coverage to plaintiff because the vehicle that was responsible for plaintiff's injuries was an "underinsured motor vehicle" as defined by the Illinois Insurance Code (215 ILCS 5/143a—2(4) (West 1994)). Amica appeals the grant of summary judgment for plaintiff.

The undisputed facts establish that on September 15, 1989, while vacationing at Yellowstone Park, plaintiff was a passenger in a rental car operated by her husband and was injured when the car was struck from behind by a vehicle driven by Gary Dale Tamminga. Tamminga was also driving a rented car, which was insured under a policy issued by National Casualty Company that carried "split limits" of $25,000 per person and $50,000 per occurrence. Tamminga also had excess coverage for a vehicle he owned under a policy issued by State Farm Insurance Company that carried "split limits" of $100,000 per person and $300,000 per occurrence. Thus, the total amount of liability coverage carried by Tamminga equaled $125,000 per person and $350,000 per occurrence.

Plaintiff brought suit against Tamminga in the United States District Court for the Western District of Michigan. This action was dismissed in August 1994, pursuant to a settlement agreement under which plaintiff received $25,000 from National Casualty and $100,000 from State Farm, as payment of the full amount of the per-person limits under their respective policies.

No insurance was provided for in the rental agreement for the vehicle in which plaintiff was riding when she was injured. Plaintiff's family vehicles were insured by Amica under a policy that provided underinsured motorist coverage and carried a "single limit" of $300,000 for each accident.

Plaintiff and Amica filed cross-motions for summary judgment in the declaratory judgment action. Amica asserted that because the $350,000 combined total of the "per occurrence" limits of Tamminga's policies exceeded plaintiff's $300,000 "single limit" under the Amica policy, the vehicle driven by Tamminga was not underinsured. Plaintiff contended that the $300,000 "single limit" in her policy must be compared to Tamminga's combined per-person liability limits of $125,000 in determining whether his vehicle was underinsured. Plaintiff argued that after the statutory setoff was applied, she was entitled to recover up to $175,000 of coverage under the underinsured motorist provision in her Amica policy. The trial court agreed with the plaintiff's position and entered summary judgment in her favor. Amica has challenged that ruling, claiming that the trial court erred in its interpretation of the statutory language that defines an underinsured motor vehicle.

■ The entry of summary judgment is appropriate where there are no questions of fact and judgment can be entered as a matter of law. 735 ILCS 5/2—1005 (West 1994); *Kolakowski v. Voris,* 83 Ill. 2d 388, 398, 415 N.E.2d 397 (1980); *Illinois Farmers Insurance Co. v. Tabor,* 267 Ill. App. 3d 245, 247, 642 N.E.2d 159 (1994). The interpretation of a statutory provision is a question of law that is properly decided by summary judgment. *Tabor,* 267 Ill. App. 3d at 247. Courts of review consider the entry of summary judgment *de novo. Outboard Marine Corp. v. Liberty Mutual Insurance Co.,* 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992).

■ Section 143a—2(4) of the Illinois Insurance Code defines an underinsured motor vehicle as follows:

> "For the purpose of this Code the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage

shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle." 215 ILCS 5/143a—2(4) (West 1994).

■ In construing a statutory provision, the primary goal is to ascertain and give effect to the legislature's intent. *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 540-41, 605 N.E.2d 539 (1992). To accomplish this goal, courts may consider the reason and necessity for the law, the evils to be remedied, and the objectives to be attained. *Yapejian*, 152 Ill. 2d at 541. A court charged with the construction of a statute will assume that the legislature did not intend to produce an absurd or unjust result. *Yapejian*, 152 Ill. 2d at 541; *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 557, 591 N.E.2d 427 (1992). A statute must be read as a whole, and all relevant parts must be considered by the court. See *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397, 634 N.E.2d 712 (1994); *Cummins v. Country Mutual Insurance Co.*, 281 Ill. App. 3d 5, 9, 666 N.E.2d 909 (1996). If the language used in the statute is clear, it is unnecessary for the court to resort to other tools of statutory interpretation. *Nottage v. Jeka*, 172 Ill. 2d 386, 392, 667 N.E.2d 91 (1996).

Amica has argued that the clear and unambiguous language found in section 143a—2 requires that the determination of whether a vehicle is underinsured is not controlled by the value of the benefits actually received from the underinsured's carrier but, rather, upon the limits of coverage stated in the underinsured's liability policy. We do not agree.

Prior cases have held the statutory definition of an "underinsured motor vehicle" contained in the first sentence of section 143a—2(4) is unambiguous and have ignored the legislative history supporting this provision. See *Golladay v. Allied American Insurance Co.*, 271 Ill. App. 3d 465, 648 N.E.2d 157 (1995); *Illinois Farmers Insurance Co. v. Tabor*, 267 Ill. App. 3d 245, 642 N.E.2d 159 (1994); *Purlee v. Liberty Mutual Fire Insurance Co.*, 260 Ill. App. 3d 11, 631 N.E.2d 433 (1994); *Moriconi v. Sentry Insurance of Illinois, Inc.*, 193 Ill. App. 3d 904, 550 N.E.2d 637 (1990).

However, we find the better-reasoned approach is that expressed in *Hathaway v. Standard Mutual Insurance Co.*, 285 Ill. App. 3d 67, 673 N.E.2d 725 (1996), where the court stated that the legislative history of section 143a—2(4) must be considered in order to prevent an absurd or an unjust result. *Hathaway*, 285 Ill. App. 3d at 71. Although that decision centered upon the recovery of underinsured motorist benefits when multiple claimants are involved, the reasoning employed also governs the case at bar.

■ It is established that the legislature's intent in enacting the underinsured motorist statute was to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance. *Sulser*, 147 Ill. 2d at 555. Accordingly, this provision is designed to assure compensation for an insured's injuries in an amount equal to, but not exceeding, the limit of underinsured motorist coverage specified in the insured's policy. *Sulser*, 147 Ill. 2d at 556.

The aim of this coverage is to provide protection for the difference between the insured's claim and the amounts available from the underinsured driver. *Sulser*, 147 Ill. 2d at 556. Accordingly, section 143a—2 must be construed to allow an insured to "fill the gap" between the benefits paid by the culpable driver's liability carrier and the limit of underinsurance coverage specified in the insured's policy. *Sulser*, 147 Ill. 2d at 556; *Hathaway*, 285 Ill. App. 3d at 73; *Banes v. Western States Insurance Co.*, 247 Ill. App. 3d 480, 482-83, 616 N.E.2d 1021 (1993).

■ Contrary to the approach taken in previous cases, we hold that the first sentence of section 143a—2 cannot be read in isolation to defeat this purpose. *Hathaway*, 285 Ill. App. 3d at 73-74, quoting *Hoglund v. State Farm Mutual Automobile Insurance Co.*, 148 Ill. 2d 272, 279-80, 592 N.E.2d 1031 (1992). When the language of section 143a—2 is considered in its entirety, along with the drafters' intent, it is clear that the relevant factor is the amount the injured party can actually recover from the tortious driver. See *Cummins*, 281 Ill. App. 3d at 13; *Banes*, 247 Ill. App. 3d at 486. Here, that amount cannot exceed $125,000.

Thus, the insured is entitled to claim benefits in an amount equalling the limit of his underinsured motorist coverage, and the insurer has the right to claim a setoff for benefits received from the underinsured's carrier. Under this scenario, the insured is afforded the full value of the coverage purchased, and the insurer is obligated to pay benefits only up to the limit of the coverage selected by the insured, less those amounts actually recovered from the tortfeasor's liability insurer. See *Sulser*, 147 Ill. 2d at 556-57; *Hathaway*, 285 Ill. App. 3d at 69; *Cummins*, 281 Ill. App. 3d at 9.

This construction of section 143a—2 is consistent with the public policy behind the statute, the policyholder's reasonable expectations and the coverage intended to be provided by the policy. See *Hoglund*, 148 Ill. 2d at 279. To hold otherwise would nullify the bargained-for coverage under the policies and allow the insurance provider to receive premiums that it did not earn. See *Hoglund*, 148 Ill. 2d at 278-80. We are secure in the knowledge that such a windfall to underinsurance providers was not intended by the legislature or contemplated by the insurance industry.

Amica also contends that in determining whether Tamminga's vehicle was underinsured, the $350,000 per-occurrence maximum provided by Tamminga's "split limits" policies must be compared to the $300,000 single limit specified in the policy issued by Amica. This argument has no merit. The accident operates to trigger the inquiry as to the extent of the coverage carried by the tortfeasor. Because plaintiff was the sole party injured in the September 15, 1989, accident, the maximum amount of coverage that would ever be applicable to this incident was the $125,000 per person limit. See generally *Tabor*, 267 Ill. App. 3d at 250-51.

We hold, therefore, that the trial court correctly determined that Tamminga's vehicle was underinsured after comparing the plaintiff's underinsurance coverage to the benefits she received from Tamminga's liability insurer. That comparison revealed that plaintiff was entitled to claim $175,000 in underinsurance benefits. It is precisely for this protection that plaintiff negotiated and paid a premium for the $300,000 limit on her underinsured motorist coverage.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

THEIS and QUINN, JJ., concur.