SECOND DIVISION
Date Filed: October 17, 2006

No. 1-05-1891

| | |
|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, | ) Appeal from the ) Circuit Court of ) Cook County. |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) No. 04 CH 07463 |
| | ) |
| STEVEN E. COE, | ) Honorable ) Julia Nowicki, |
| Defendant-Appellant. | ) Judge Presiding. |

Modified Opinion Upon Denial of Rehearing

JUSTICE HALL delivered the opinion of the court:

The plaintiff, State Farm Mutual Automobile Insurance Company (State Farm) filed a complaint for declaratory judgment seeking a determination that the defendant, Steven E. Coe, was not entitled to underinsured motorist benefits under his automobile liability policy with State Farm. Both parties filed motions for summary judgment. Mr. Coe appeals the order of the circuit court of Cook County granting summary judgment to State Farm and denying Mr. Coe's motion for summary judgment.

The sole issue on appeal is the correctness of the circuit court's order. The pertinent facts are summarized below.

On November 20, 2001, Mr. Coe, a police officer for the Village of Park Forest, was directing traffic when he was struck by a car driven by Nicole Moorehouse. Ms. Moorehouse was insured for automobile liability, with limits of $50,000. Mr. Coe received over $100,000 in workers' compensation benefits, but claimed special

damages in the amount of $150,000.[1]

    At the time of the accident, Mr. Coe was insured by State Farm for automobile

---

[1]Mr. Coe's workers' compensation settlement was structured as follows: Total settlement $75,000; minus $15,000 for attorney fees and $136.03 (unexplained deduction), leaving Mr. Coe with $59,863.97.  In addition, Mr. Coe's employer agreed to waive its lien under section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 2004) against the portion of the recovery funded by Ms. Moorehouse's coverage.

liability.  The policy provided underinsured motorist coverage with a $100,000 limit.

Under the underinsured motorist coverage, State Farm agreed to "pay damages for

**bodily injury** an **insured** is legally entitled to collect from the owner or driver of an

**underinsured motor vehicle**."  State Farm's agreement to pay damages pursuant to

the underinsured motorist provision was subject to the following policy limitations:

"1.  The amount of coverage is shown on the declarations page under 'Limits

of Liability - W - Each Person, Each Accident.'  Under 'Each Person' is the

amount of coverage for all damages due to **bodily injury** to one **person**.  '**Bodily**

**injury** to one **person**' includes all injury and damages to others resulting from

this **bodily injury** and all emotional distress resulting from this **bodily injury**

sustained by other **persons** who do not sustain **bodily injury**. ***

2.  Any amount paid or payable to or for the **insured** under any workers'

compensation, disability benefits, or similar law shall reduce the amount payable

under this coverage.  The reduction may be taken only once and shall first be

applied to the amount payable by any policy providing coverage on a primary

basis. ***

*** 

5.  a.  The most we will pay any one **insured** is the lesser of:

(1) the amount by which the 'each person' limit of this coverage

exceeds the sum of the 'each person' limits of liability of all bodily

injury liability insurance coverages that apply to the accident; or

(2) the amount by which the **insured's** damages for **bodily**

3

> **injury** exceed the sum of the 'each person' limits of liability of all bodily injury liability insurance coverages that apply to the accident."[2]

Pursuant to the policy terms, Mr. Coe sought arbitration of his underinsured coverage claim. State Farm responded by filing the instant complaint for declaratory judgment. The complaint alleged that Ms. Moorehouse's insurance company had agreed to pay the $50,000 limit of liability under her policy to Mr. Coe and that Mr. Coe

---

[2]Mr. Coe notes that the record contains two different insurance policies. As there is no dispute as to what the policy states, as opposed to what it means, the language quoted is from the copy of the policy attached to State Farm's motion for summary judgment.

was entitled to in excess of $100,000 in workers' compensation benefits. Based on those amounts, State Farm sought a declaration that Mr. Coe was not entitled to any benefit under the underinsured motorist provision of his State Farm policy. In response to a request to admit facts, Mr. Coe admitted he settled his workers' compensation claim with the Village of Park Forest for an amount not less than $100,000. Both parties filed motions for summary judgment.

In its motion, State Farm argued that, under the underinsured motorist limitations provisions, it was entitled to set off Mr. Coe's workers' compensation settlement against the underinsured coverage amount. The settlement amount of $100,000 reduced the underinsured benefits of $100,000 to -0-. Therefore, Mr. Coe was not entitled to any recovery under the underinsured motorist provisions of the policy.

In his motion, Mr. Coe maintained that his special damages were well in excess of $150,000. He further maintained, "[T]o the extent that the Illinois Insurance Code permits any set-off for benefits received though [sic] Workers' Compensation, the Code, the plain language of the insurance policy, and public policy define the 'amounts payable' to which such a set-off may be applied as the total damages of the insured Defendant, not the limits of [underinsured motorist] coverage." (Emphasis in original.)

The circuit court granted summary judgment to State Farm and denied Mr. Coe's summary judgment motion. In its ruling, the circuit court relied on the supreme court's decisions in Sulser v. Country Mutual Insurance Co., 147 Ill. 2d 548, 591 N.E.2d 427 (1992), and Ullman v. Wolverine Insurance Co., 48 Ill. 2d 1, 269 N.E.2d 295 (1970). This timely appeal followed.

ANALYSIS

I. Standard of Review

The court reviews motions for summary judgment <u>de</u> <u>novo</u>. <u>Chubb Insurance Co. v. DeChambre</u>, 349 Ill. App. 3d 56, 59, 808 N.E.2d 37 (2004). Summary judgment is proper if, and only if, the pleadings, depositions, admissions, affidavits and other relevant matters on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. <u>DeChambre</u>, 349 Ill. App. 3d at 59.

By filing cross-motions for summary judgment, the parties invite the court to determine the issues as a matter of law and enter judgment in favor of one of the parties. <u>Wolfram Partnership, Ltd. v. LaSalle National Bank</u>, 328 Ill. App. 3d 207, 765 N.E.2d 1012 (2001). Yet the mere filing of cross-motions does not preclude a determination that triable questions of fact exist. <u>Wolfram</u>, 328 Ill. App. 3d at 215. Summary judgment should only be allowed when the right of the moving party is free from doubt. <u>Elliott v. Williams</u>, 347 Ill. App. 3d 109, 112, 807 N.E.2d 506 (2004).

II. Principles Applicable to the Construction of

Insurance Policies

"An insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." <u>Hobbs v. Hartford Insurance Co. of the Midwest</u>, 214 Ill. 2d 11, 17, 823 N.E.2d 561 (2005). The court's "primary objective when construing an insurance policy is to ascertain and give effect to the intention of the parties, as expressed in the policy language." <u>Gillen v. State Farm Mutual Automobile Insurance Co.</u>, 215 Ill. 2d 381, 393, 830 N.E. 2d 575

6

(2005). "If the policy language is unambiguous, the policy will be applied as written, unless it contravenes public policy." Hobbs, 214 Ill. 2d at 17. "Whether an ambiguity exists turns on whether the policy language is subject to more than one reasonable interpretation." Hobbs, 214 Ill. 2d at 17. "If the policy language is susceptible to more than one reasonable meaning, it is considered ambiguous and will be construed against the insurer." Gillen, 215 Ill. 2d at 393.

"Importantly, a policy provision that purports to exclude or limit coverage will be read narrowly and will be applied only where its terms are clear, definite, and specific." Gillen, 215 Ill. 2d at 393. However, this rule of construction only comes into play if the policy is ambiguous. Hobbs, 214 Ill. 2d at 17.

## III. Discussion

Section 143a-2(4) of the Illinois Insurance Code (215 ILCS 5/143a-2(4) (West 2000)) (the Insurance Code) provides in pertinent part as follows:

> "For the purpose of this Code the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be

7

the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle. However, the maximum amount payable by the underinsured motorist coverage carrier shall not exceed the amount by which the limits of the underinsured motorist coverage exceeds the limits of the bodily injury liability insurance of the owner or operator of the underinsured motor vehicle."

215 ILCS 5/143a-2(4) (West 2000).

The underlying purpose of underinsured motorist coverage is to place the insured in the same position he would have occupied if the tortfeasor had carried adequate insurance. Sulser, 147 Ill. 2d at 555; see Martin v. Illinois Farmers Insurance, 318 Ill. App. 3d 751, 758, 742 N.E.2d 848 (2000) (the purpose of underinsured coverage is to furnish protection for the difference between the insured's claim and the amounts available from the underinsured driver). Section 143a-2(4) "must be construed to allow an insured to 'fill the gap' between the benefits paid by the tortfeasor's insurance carrier and the limit of underinsurance coverage specified in the insured's policy." Martin, 318 Ill. App. 3d at 758, quoting Koperski v. Amica Mutual Insurance Co., 287 Ill. App. 3d 494, 498, 678 N.E.2d 734 (1997). Our supreme court has interpreted this section to allow an insurer to reduce its underinsured motorist coverage by the amount of the workers' compensation payments made to the insured. Sulser, 147 Ill. 2d at 553.

Mr. Coe contends that the policy language, "amount payable under this coverage," does not mean policy limits but refers to "all legally available damages for bodily injury." In support of his argument, Mr. Coe suggests that the policy could have been, but was

8

not, drafted to state that any underinsured motorist payment would be reduced by subtracting the workers' compensation benefits from the limits of the underinsured coverage provided under the policy. We conclude that no redrafting is necessary.

We begin by addressing Mr. Coe's argument that the circuit court's reliance on Sulser and Ullman was misplaced as the focus of those cases was whether workers' compensation benefits could be set off against underinsured or uninsured coverage amounts. Nonetheless, the circuit court noted that in both cases, the policies contained an "amount payable" phrase.

In Ullman, the policy provided, "'any amount payable under the terms of this Endorsement [uninsured motorist coverage] because of bodily injury sustained in an accident by a person who is an insured under this coverage shall be reduced by *** (2) the amount paid and the present value of all amounts payable on account of such bodily injury under any workmen's compensation law.'" Ullman, 48 Ill. 2d at 6. The decedent had $10,000 in uninsured motorist coverage, and the plaintiff received $14,000 in workers' compensation benefits.

In addition to holding that the workers' compensation deduction from the uninsured motorist coverage was not against public policy, the Ullman court rejected an argument that Mr. Coe raises here, stating as follows:

"An argument of the plaintiff is that the provable damages sustained through the decedent's death far exceeded $10,000. If this were a case involving an insured tortfeasor, reimbursement of the employer would not be required, she contends, as the claim against the tortfeasor was not satisfied in full. Therefore,

9

the protection available under the uninsured motorist coverage provides less

protection than would have been afforded had the tortfeasor been insured.

However, the plaintiff errs. Our workmen's compensation statute does not make

the employee's obligation to reimburse his employer dependent on the

employee's recovering his full measure of damages from the tortfeasor. The

appellate court correctly observed: 'To the extent that workmen's compensation

benefits have been received, the obligation of reimbursement exists regardless of

the amount recovered or the total damages sustained by the injured employee.'

[Citations.]" Ullman, 48 Ill. 2d at 8.

In Sulser, Mr. Sulser was killed in an automobile accident. The Sulsers' policy with

Country Mutual provided $100,000 in underinsured motorist coverage but specified that

any amounts received from workers' compensation would be deducted from Country

Mutual's coverage amount. Mrs. Sulser recovered $50,000 from the underinsured

motorist and sought $50,000 from Country Mutual, the difference between the $100,000

underinsured motorist coverage and the recovery from the underinsured motorist.

Based on the parties' stipulation that over $50,000 had been paid in workers'

compensation benefits, Country Mutual declined to pay the $50,000 under the

underinsured motorist coverage. The circuit court agreed with Country Mutual, but the

appellate court reversed, finding that the Insurance Code did not provide for the setoff of

workers' compensation benefits against underinsured motorist coverage. See Sulser v.

Country Mutual Insurance Co., 208 Ill. App. 3d 15, 566 N.E.2d 851 (1991). The

supreme court disagreed, holding that the uninsured motorist statute and the

underinsured motorist statute served the same underlying purpose, and therefore, workers' compensation benefits could be set off against underinsured as well as uninsured motorist coverage. Sulser, 147 Ill. 2d at 558.

The Sulser court then addressed the argument raised by the amicus curiae that Mrs. Sulser should receive the compensation paid for by her underinsured motorist premiums. The court noted that "an insurance policy is a contract between the company and the policyholder, the benefits of which are determined by the terms of the contract unless the terms are contrary to public policy. [Citation.] The legislature intended for the insurer to state clearly in the policy what coverage was offered." Sulser, 147 Ill. 2d at 558. The court then set forth the Sulzers' underinsured motorist policy provision:

> "'Amounts payable for damages under Underinsured Motorists Coverage will be reduced by:
>
> a. all sums paid by or on behalf of persons or organizations who may be legally responsible for the bodily injury. This includes all amounts paid under the liability coverage of this policy;
>
> b. the present value of all amounts payable under any workmen's compensation ***.'" (Emphasis in original.) Sulser, 147 Ill. 2d at 559.

Observing that "[p]arties to a contract may agree to any terms they choose unless their agreement was contrary to public policy," the court held that County Mutual had no obligation to Mrs. Sulser under the underinsured motorist coverage. Sulser, 147 Ill. 2d at 559.

11

Mr. Coe relies on McKinney v. American Standard Insurance Co. of Wisconsin, 296 Ill. App. 3d 97, 694 N.E.2d 200 (1998). In that case, the insured claimed damages exceeding $318,000. He received the policy limits of $300,000 under the tortfeasor's policy and additional $18,000 from the tortfeasor. The insured then looked to the underinsured motorist provisions of his own automobile policy, which had limits of $25,000 per person and $50,000 per accident. The insurer argued that, under the policy, "'[a]ny amounts payable,'" were reduced by "'[a] payment made or amount payable by or on behalf of any person or organization which may be legally liable, or under any collectible auto liability insurance, for loss caused by an accident with an underinsured motor vehicle.'" McKinney, 296 Ill. App. 3d at 98. The insured argued that, because the tortfeasor was an underinsured motorist, the insured was entitled to prove up the entire amount of damages and recover the difference between the amount paid and his total damages up to the policy limit.

In reversing the summary judgment for the insurer, the reviewing court noted that the policy provided that the insurer would pay "all compensable damages." McKinney, 296 Ill. App. 3d at 100. "Thus, a reasonable person in the position of the insured could expect 'amounts payable' to be the equivalent of the total damages incurred." McKinney, 296 Ill. App. 3d at 100-01. The court determined that the term "amounts payable" was ambiguous, and therefore, a construction favorable to the insured was required. The court explained that the insurer was not responsible for more than the $50,000 contracted amount of underinsured motorist coverage. The $318,000 was to be subtracted from the total amount of the insured's damages. The remaining amount

12

of damages was recoverable from the insurer, subject to the $50,000 coverage limit. The case was remanded for a determination of the total amount of the insured's damages. McKinney, 296 Ill. App. 3d at 102.

We agree with State Farm that McKinney is distinguishable from the present case. First, under the policy in McKinney, an underinsured motor vehicle was defined as having "'bodily injury liability limits less than the damages an insured person is legally entitled to recover.'" (Emphasis in original.) McKinney, 296 Ill. App. 3d at 100. In the present case, the policy defines an underinsured motor vehicle as one where the limits of liability "are less than the limits **you** carry for underinsured motor vehicle coverage under this policy." Further, whereas in the present case, the workers' compensation setoff applied to reduce the "amount payable under this coverage," in McKinney, the limitation applied to "amounts payable." McKinney, 296 Ill. App. 3d at 98.

Significantly, the McKinney court did not conclude that the term "amounts payable" always meant total damages. Rather, the court reasoned that, having provided that the insurer would pay all compensable damages, the insured reasonably could have interpreted the term "amounts payable" to mean the total amount of damages incurred, thus creating an ambiguity. The existence of the ambiguity required that the "amounts payable" clause be interpreted in the insured's favor. McKinney, 296 Ill. App. 3d at 101.

Finally, Mr. Coe relies on Bergmann v. Hutton, 337 Or. 596, 101 P.3d 353 (2004). In Bergmann, the injured insured's damages totaled more than $650,000. She received the policy limits of $25,000 from the tortfeasor and $107,652 in workers' compensation benefits. She then claimed the $100,000 in underinsured motorist coverage under her

13

own policy. The insurer denied the claim.

In reversing the grant of summary judgment for the insurer, the Oregon Supreme Court explained that uninsured coverage was subject to section 742.504 of the Oregon Insurance Code (Or. Rev. Stat. §742.504 (__) which sets out required provisions for uninsured motorist coverage. That section provided in pertinent part:

> "'(c) <u>Any amount payable under the terms of this coverage</u> because of bodily injury sustained in an accident by a person who is an insured under this coverage <u>shall be reduced by</u>:
>
> (A) ***
>
> (B) The amount paid and the present value of all amounts payable on account of such bodily injury under any workers' compensation law ***.'" (Emphasis in original.) <u>Bergmann</u>, 337 Or. at 602, 101 P.3d at 357, quoting Or. Rev. Stat. §742.504(7)(c) (__).

The court noted, first, that the term "coverage" was not synonymous with the term "policy." While the terms of the policy between the insured and the insurer contained limits of liability, the only statutory limit as to coverage was the minimum limits. The court further noted that the phrase, "'<u>any amount payable</u> under the terms of this coverage <u>because of bodily injury sustained in an accident</u> by a person who is insured under the coverage'" tracked the wording of the statute defining the insurer's liability for uninsured coverage. (Emphasis in original.) <u>Bergmann</u>, 337 Or. at 605, 101 P.3d at 358. The court stated:

> "Thus, the amount that is 'payable' by the insurer under the 'coverage' is 'all

sums' that the insured is 'legally entitled to recover' as a result of an accident with an uninsured motorist. In the usual case, that amount would be equal to the insurer's total damages, although there may be cases in which the insured would not be 'legally entitled to recover' all of his or her damages, such as when the tortfeasor is immune from liability or when there has been a determination of comparative fault. Notably, in defining the insurer's liability for coverage, ORS 742.504(1)(a) does not speak to any limits on the insurer's liability under a policy." (Emphasis in original.) Bergmann, 337 Or. at 605, 101 P.3d at 358.

Finally, noting that the uninsured/underinsured motorist statute repeatedly employed the terms "limits of liability" and "liability limits," the court concluded that "if the legislature had intended the phrase, 'any amount payable under the terms of this coverage' in ORS 742.504(7)(c) to mean the insurer's liability limit, it would have done so expressly." Bergmann, 337 Or. at 607, 101 P.3d at 359.

State Farm concedes that its policy language is similar to the language in section 742.504(7)(c) of the Oregon Insurance Code. However, State Farm points out that the decisions of other state courts are not binding on Illinois courts and need not be followed where the Illinois Supreme Court has addressed the issue. See Fosse v. Pensabene, 362 Ill. App. 3d 172, 186, 838 N.E.2d 258 (2005) ("this court is not bound to follow decisions from other states"); Mekertichian v. Mercedes-Benz U.S.A., L.L.C., 347 Ill. App. 3d 828, 836, 807 N.E.2d 1165 (2004) ("After our supreme court has declared the law with respect to an issue, this court must follow that law, as only the supreme court has authority to overrule or modify its own decisions"). Under the Bergmann

15

court's construction of the policy language, the insured would do better if the accident involved an underinsured motorist rather than a fully insured one. That is contrary to the purpose behind the Illinois statute and, therefore, we will not follow Bergmann. See Roberts v. Northland Insurance Co., 185 Ill. 2d 262, 269, 705 N.E.2d 762 (1998), quoting Sulser, 147 Ill. 2d at 558 (General Assembly intended "that underinsured-motorist coverage 'place the insured in the same position he would have occupied if injured by a motorist who carried liability insurance in the same amount as the policyholder'").

Mr. Coe then argues that the term "amount payable under this coverage" is ambiguous and must be resolved in his favor as the insured. In determining the extent to which the limits of liability clause affects the insured's underinsured motorist claim, it is appropriate to consider an insured's reasonable expectations and the coverage intended by the policy. McKinney, 296 Ill. App. 3d at 100. Nonetheless, parties to a contract may agree to any terms they chose unless their agreement is against public policy. Sulser, 147 Ill. 2d at 559.

Under the terms of the policy, State Farm promised to pay "damages for bodily injury an insured is legally entitled to collect from the owner or driver of an underinsured motor vehicle." (Emphasis omitted.)[3] This promise to pay was subject to the policy's limits of liability clause under which any workers' compensation benefits "shall reduce the

---

[3]There is no dispute in this case that Ms. Moorehouse's vehicle was an underinsured vehicle.

16

amount payable under these coverages."  "Amount payable under this coverage" is not ambiguous but clearly refers to the $100,000 available under the underinsured motorist provision, not the total amount of Mr. Coe's damages.

Mr. Coe then contends that allowing the workers' compensation setoff against the underinsured coverage amount without considering the total damages he sustained violates the purpose behind the underinsured motorist statute.  He argues that the circuit court's interpretation of Sulser conflicts with the supreme court's decision in Hoglund v. State Farm Mutual Automobile Insurance Co., 148 Ill. 2d 272, 592 N.E.2d 1031 (1992).

In Hoglund, Ms. Hoglund was insured under her father's automobile liability policy, which provided $100,000 in uninsured motorist coverage.  While a passenger on an uninsured motorcycle, she was injured when it collided with another vehicle.  Both drivers were at fault, and Ms. Hoglund received the policy limits of $100,000 from the other driver.  As her total damages were over $200,000, she sought the policy limit of $100,000 under the uninsured motorist coverage of her father's policy.

The uninsured motorist coverage contained a limits of liability provision stating: "'Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the insured: *** or c. under any worker's compensation, disability benefits or similar law.'"  Hoglund, 148 Ill. 2d at 275.  Arguing that the policy language tracked section 143a(4) of the Insurance Code, State Farm maintained that it was entitled to a setoff against the uninsured motorist coverage of all amounts recovered from other sources.  Since Ms. Hoglund had received $100,000 from the other driver, State Farm

17

reasoned that it owed nothing to Ms. Hoglund.   While the circuit court agreed with State Farm, the appellate court reversed.  On further review, the supreme court affirmed the appellate court.

Based on its review of the policies and the Insurance Code, the court found that the meaning of the setoff provisions was to prevent a double recovery by the insured. Hoglund, 148 Ill. 2d at 277.  In addition to the payment of premiums for the uninsured motorist coverage, the court also found it significant that Ms. Hoglund was injured by both an insured and an uninsured motorist, and that State Farm was seeking a credit "for money paid by another party for that fault which is unrelated to the fault of the uninsured motorist."  Hoglund, 148 Ill. 2d at 279.  To allow a literal interpretation of the policy language would (1) violate the public policy behind the uninsured motorist statute; (2) nullify the coverage intended by the policies; and (3) deny the policyholder substantial economic value in return for the payment of premiums.  Hoglund, 148 Ill. 2d at 280.

The court concluded that by adopting State Farm's argument, the purpose of placing the injured party in the same position he would be in if the uninsured driver had been insured would be frustrated.  The court pointed out that if the uninsured driver had carried $100,000 in coverage, as did the other driver, Ms. Hoglund would have been entitled to collect $100,000 from each driver, which would have "fully compensated her for her $200,000 in damages."  Hoglund, 148 Ill. 2d at 280.

Mr. Coe's reliance on Hoglund is misplaced.  In Banes v. Western States Insurance Co., 247 Ill. App. 3d 480, 483, 616 N.E.2d 1021 (1993), the court held that, while the

Hoglund rationale was not limited to uninsured motorist cases, it did not apply where there was only one tortfeasor. The Banes court noted that the "concern for double recovery arises only in the context of more than one tort-feasor, as the amount paid by one tort-feasor acts to reduce the recoverable damages from the remaining tort-feasors." Banes, 247 Ill. App. 3d at 483. In the present case, there is only one tortfeasor.

Moreover, unlike the present case, Hoglund did not involve a setoff for workers' compensation benefits. In Roberts, the supreme court explained that setoffs for benefits received from workers' compensation implicate different considerations than setoffs for amounts received from a tortfeasor's liability insurer. Roberts, 185 Ill. 2d at 270 (finding the latter cases inapplicable in deciding cases involving setoffs for workers' compensation benefits).

In any event, Hoglund does not support Mr. Coe's argument that "amount payable under this coverage," means the injured party's total damages. The Hoglund court agreed that the policies, which contained the same "amount payable under this coverage" language and the rights to setoffs similar to those in the present case, permitted the setoffs to reduce State Farm's obligation under the uninsured motorist coverage to -0-. The "total amount of damages" played no part in the court's analysis of why the provision was ambiguous; the court was concerned only with the amount of coverage available. See Hoglund, 148 Ill. 2d at 274, 280 (while Ms. Hoglund claimed her total damages were over $200,000, the court concluded that she would be fully compensated by the payment of $200,000).

19

Had Ms. Moorehouse carried $100,000 in liability coverage, Mr. Coe would have been required to reimburse his employer for the $100,000 in workers' compensation benefits he acknowledged receiving for the accident up to the full amount of the insurance proceeds of $100,000. See Roberts, 185 Ill. 2d at 268, citing Sulser, 147 Ill. 2d at 553; 820 ILCS 305/5(b) (West 1992). Thus, he would have been left with $100,000 only, despite his damages being in excess of $150,000. "Underinsured motorist coverage is 'not intended to allow the insured to recover amounts from the insurer over and above the coverage provided by the underinsured motorist policy.'" Banes, 247 Ill. App. 3d at 485, quoting Sulser, 147 Ill. 2d at 556.

Mr. Coe received $50,000 from Ms. Moorehouse and $100,000 in workers' compensation benefits from his employer. Without the workers' compensation setoff, had he also received the $50,000 from his underinsured motorist coverage (the difference between Ms. Moorehouse's policy limits and Mr. Coe's $100,000 underinsured motorist coverage) he sought in this case, Mr. Coe would receive $200,000 or twice as much as he would have received had Ms. Moorehouse not been an underinsured motorist. Allowing State Farm a setoff for the $100,000 workers' compensation benefit would reduce the amount to $100,000 or the same amount Mr. Coe would have received if Ms. Moorehouse had carried the same liability limits.

Crediting State Farm with the workers' compensation benefit, Mr. Coe is in substantially the same position as he would have been had Ms. Moorehouse carried the same insurance coverage. Unlike Hoglund, the setoff sought by State Farm is related to the fault of the underinsured Ms. Moorehouse. Unlike the insured in Hoglund, Mr.

Coe did receive the insurance protection for which he paid because he was as fully compensated as he would have been had Ms. Moorehouse carried the same liability limits as he did.  But see McKinney, 296 Ill. App. 3d at 101 (the court, in dicta, concluded that if "amounts payable" meant the underinsured motorist coverage limit, the insurer would never pay its underinsured motorist policy limits, rendering an endorsement for underinsured motorist coverage an illusory contract).

We conclude that the term "amount payable under this coverage" was not ambiguous and did not include the total damages incurred by Mr. Coe.  We further conclude that the setoff for workers' compensation benefits in this case did not violate the purpose of the underinsured motorist statute, and therefore, did not violate public policy.  Thus, the circuit court's order granting summary judgment to State Farm and denying summary judgment to Mr. Coe was correct.

The judgment of the circuit court is affirmed.

Affirmed.

GARCIA, P.J., and WOLFSON, J., concur.

No. 1-05-1891